**SERVED ON:  November 17, 2011**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BEIMAN ZAPATA,

                           Plaintiff,

         -against-

                                        Docket No.:
                                        10 cv 06283/CM
RIVERSIDE STUDY CENTER, INC. and
SEE PAINTING, INC.,
                                        Hon. Colleen McMahon

                          Defendants.
-----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION BY DEFENDANT, RIVERSIDE STUDY CENTER, INC. FOR SUMMARY JUDGMENT

Respectfully submitted,

PEÑA & KAHN, PLLC
Attorneys for Plaintiff
1200 Waters Place, Suite M102
Bronx, New York 10461
(718) 585-6551

BY:  SHAYNE, DACHS, CORKER, SAUER
     & DACHS, LLP

            JONATHAN A. DACHS (JD 3687)
114 Old Country Road, Suite 410
Mineola, New York 11501
(516) 747-1100

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................... ii

PRELIMINARY STATEMENT ............................................... 1

    Salient Facts ...................................................... 2
    Applicable Statutes ................................................ 4
    Federal Rules ...................................................... 5

POINT I ................................................................ 6

        CONTRARY TO RIVERSIDE'S CONTENTION, THE STATUTORY EXEMPTION FOR OWNERS OF ONE OR TWO-FAMILY DWELLINGS WHO CONTRACT FOR BUT DO NOT DIRECT OR CONTROL THE WORK DOES NOT APPLY TO RIVERSIDE, THE OWNER OF THE BUILDING CONTAINING THE CHAPEL WHERE PLAINTIFF'S ACCIDENT TOOK PLACE.

POINT II ............................................................... 13

        CONTRARY TO RIVERSIDE'S CONTENTION, IT HAS NOT DEMONSTRATED ITS ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW DISMISSING PLAINTIFF'S COMMON LAW NEGLIGENCE AND LABOR LAW §200 CLAIMS.

CONCLUSION ........................................................... 17

        FOR ALL OF THE FOREGOING REASONS, DEFENDANT RIVERSIDE'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED IN ITS ENTIRETY.

## TABLE OF AUTHORITIES

**PAGE**

**CASES:**

*Adelphia Communications Corp.*, 376 BR 87 (2007) ................................. 11

*Azad v. 270 5th Realty Corp.*, 46 AD3d 728, 730, 848 NYS2d 688 ....................... 16

*Bartoo v. Buell*, 87 NY2d 362 (1996) ................................................ 9

*BMC Indus., Inc. v. Barth Indus. Inc.*,
160 F.3d 1322, 1337 N.28 (11th Cir. 1998) ........................................... 11

*Bobrow v. DePalo*, 655 F. Supp. 685
(S.D.N.Y. Leval, D.J.) .............................................................. 7

*Cannon v. Putnam*, 76 NY2d 644 (1990) ......................................... 7, 8

*Castellanos v. United Cerebral Palsy*, 77 AD3d 879
(2d Dept. 2010), lv. to app. den. 16 NY3d 704 (2011) ................................. 11

*Celotex Corp. v. Catrett*, 477 US 317, 323 (1986) .................................... 13

*Chowdhury v. Rodriguez*, 57 AD3d 121 (2d Dept. 2008) .............................. 16

*Connell v. Hayden*, 83 AD3d 30 (2d Dept. 1981) ..................................... 7

*DaBolt v. Bethlehem Steel Corp.*, 92 AD2d 70, 73 (4th Dept. 1983) ..................... 16

*Gameologist Group, LLC v. Scientific Games Intern., Inc.*,
2011 WL 5075224 (S.D.N.Y., October 25, 2011) (Koeltl, Dist. J.) ...................... 13

*Garcia v. Martin*, 285 AD3d 391 (1st Dept. 2001) .................................... 8

*Giambalvo v. Chemical Bank*, 260 AD2d at 433, 687 NYS2d 728 ....................... 16

*Kennedy v. McKay*, 86 AD2d 597 (2d Dept. 1982) .................................. 16

*Kerins v. Vassar Coll.*, 15 AD3d 623, 626, 790 NYS2d 697 ........................... 16

*Kobeszko v. Lyden Realty Invs.*, 289 AD2d 535, 536, 737 NYS2d 189 .................. 16

*Krukowski v. Steffensen*, 194 AD2d 179 (2d Dept. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lagzdins v. United Welfare Fund-Security Div. Marriott Corp.*,
77 AD2d 585 (2d Dept. 1980 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lenda v. Breeze Concrete Corp.*, 73 AD3d 987 (2d Dept. 2010) . . . . . . . . . . . . . . . . . . . . . . . 7

*Lombardi v. Stout*, 80 NY2d 290 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lunde v. Nichols Yacht Sales, Inc.*, 143 AD2d 816 (2d Dept. 1988) . . . . . . . . . . . . . . . . . . . . . 16

*Miller v. Perillo*, 71 AD2d 389, 391 (1st Dept. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Monroe v. City of New York*, 67 AD2d 89, 96 (2d Dept. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Muniz v. Church of Our Lady of Mt. Carmel*,
238 AD2d 101 (1st Dept. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*N.Y. City Dist. Council of Carpenters Pension Fund v.
Star Intercom & Const. Inc.*, 2011 WL 5103349
(2d Cir. October 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Russin v. Picciano & Son*, 54 NY2d 311 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Stern v. Grossman*, ___ F. Supp. ___, 1989 WL 38349
(S.D.N.Y. Cederbaum, D.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Thompson v. Tracy*, 2008 WL 190449 (S.D.N.Y. 2008)
(McMahon, Dist. J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Uddin v. Three Bros. Const. Corp.*, 33 AD3d 691 (2d Dept. 2006) . . . . . . . . . . . . . . . . . . . 10, 12

*United Transp. Union v. Nat'l R.R. Passenger Corp.*,
588 F.3d 805, 809 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Valencia v. Calero* , 5 AD3d 254 (1st Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Van Amerogen v. Donnini*, 78 NY2d 880 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Vt. Teddy Bear Co. v. 1-800-Beargram, Co.*,
373 F.3d 241, 249 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES**:

Federal Rules of Civil Procedure Rule 56   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

Federal Rules of Civil Procedure Rule 8   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

N.Y. Labor Law §200  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13, 15-17

N.Y. Labor Law §240  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 6-8

N.Y. Labor Law §241  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 6-8

N.Y. Mental Hygiene Law §41.34(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TREATISES**:

Baicker-McKee, Janssen, Corr, Federal Civil
Rules Handbook (2011), p. 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mem. of N.Y. Law Rev. Comm., 1980 McKinney's
Session Law of N.Y. at 1658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BEIMAN ZAPATA,

                                    Plaintiff,

        - against -                                          Docket No.: 10 Civ. 06283/CM

RIVERSIDE STUDY CENTER INC. and
SEE PAINTING, INC.,

                                    Defendants.
------------------------------------------------------------x

## MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

        This Memorandum of Law is respectfully submitted in opposition to the motion by

Defendant, Riverside Study Center, Inc. (Riverside) for summary judgment pursuant to Federal

Rules of Civil Procedure Rule 56.  Inasmuch as Riverside's motion, with respect to Labor Law

§§240(1) and 241(6), as limited by its Memorandum of Law, is predicated solely upon the thesis that

it is entitled to avail itself of the homeowners' exemption, and no claim has been made therein that

Plaintiff's conduct was the "sole proximate cause" of the accident, this Memorandum of Law is

similarly limited to that issue.

        As will be demonstrated herein, Riverside's contention that N.Y. Labor Law §§240(1) and

241(6) are inapplicable herein because it is entitled to rely upon the statutory exemption for owners

of one or two-family homes who contract for but do not direct or control the work is legally and

factually erroneous and unsupportable.  Accordingly,  for that reason and the reasons previously

demonstrated by Plaintiff in support of his motion for summary judgment, Riverside's motion should

be denied in its entirety and summary judgment should be granted to the Plaintiff on his Labor Law §240(1) and §241(6) causes of action.

As will also be demonstrated below, Riverside has failed to establish its entitlement to judgment as a matter of law dismissing Plaintiff's common law negligence/Labor Law §200 claims insofar as the evidence it presented did not establish the absence of material facts as to whether Riverside had actual or constructive notice of a dangerous condition of the premises, or supervised or controlled the work being performed on its premises, or at least had the authority to do so. Accordingly, that portion of Riverside's motion seeking summary dismissal of the Labor Law §200/common law negligence claims should be denied as well.

## Salient Facts

This action arose out of an accident that occurred on June 11, 2009, at premises located at 330 Riverside Drive, New York, New York, owned by the Defendant, Riverside Study Center Inc. (hereinafter "Riverside"), while Plaintiff was engaged in performing work in the course and scope of his employment by Otto Interiors, Inc. (hereinafter "Otto"). The work in which Plaintiff was engaged at the time of the accident was pursuant to a contract entered into between Riverside and the Defendant, See Painting, Inc. (hereinafter "See") to repair and paint the chapel room located within Riverside's building located at the aforementioned address.

As demonstrated by an attachment to the Affidavit of William Orchard, Riverside's President, submitted in support of Riverside's motion for summary judgment (Exhibit "G"), 330 Riverside Drive is a five story, 22-room building. The first floor contains a reception area, large library/classroom and a kitchen. The second floor contains the chapel wherein the accident occurred,

-2-

a dining room and pantry. The third floor consists of a living room, director's room, priest's sitting room and office. The fourth floor has another library, a seminar room and two quad bedrooms. The fifth floor contains seven bedrooms.

Significantly, the said document reveals that while one floor and a small section of another floor serve as a residence for priests and Opus Dei members, the major portion of the building, i.e., the first, second, third and most of the fourth floors, is used for non-residential purposes such as for meetings, lectures, study groups, work areas and to conduct college and graduate level courses, organized, sponsored and administered by Riverside and/or Opus Dei. The chapel in which the accident occurred is among the places that are used for non-residential, church-related purposes.

Furthermore, while Mr. Orchard's Affidavit states, conclusorily, that all of the rooms, including the chapel, are used for residential purposes, it is clear that except for the bedrooms, the building's principle use is for non-residential purposes. Indeed, even the bedrooms have a commercial aspect associated with them inasmuch as their occupants pay rent to Riverside for the privilege of residing in them. Notwithstanding that Mr. Orchard euphemistically characterizes the payment for electricity, fuel, maintenance, supplies and general upkeep as expense "sharing," these payments are essentially the payments of rent.

The Amended Complaint (Riverside's Exhibit "A") alleges that Defendant's breached Labor Laws §§200, 240(1) and 241(6) (¶36-37; see also ¶44). In support thereof, Plaintiff has demonstrated that while he was ascending a scaffold for the purpose of removing tools and equipment therefrom in preparation for dismantling the scaffold, it suddenly tipped, causing him to fall to the ground below. Plaintiff has further demonstrated that despite instructions from the

manufacturer that outriggers should be used to stabilize the scaffold and Defendant See's knowledge that such outriggers should be used, outriggers were not in place at the time of the accident.

The Answer interposed on behalf of the Defendant Riverside (Riverside's Exhibit "C") does not plead as an affirmative defense that Riverside was exempt from the requirements of Labor Law §240 or 241 by reason of the homeowner's exemption, i.e., that it was the owner of a one or two-family dwelling who contracted for but did not direct or control the work.

### Applicable Statutes

Labor Law §240 provides in pertinent part as follows:

> 1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Labor Law §241 provides in pertinent part as follows:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
> * * *
> 6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

### Federal Rules

FRCP 8 provides in pertinent part as follows:

\* \* \*

(c) Affirmative Defenses

    (1) In general.  In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. . . ."

## POINT I

**CONTRARY TO RIVERSIDE'S CONTENTION, THE STATUTORY EXEMPTION FOR OWNERS OF ONE OR TWO-FAMILY DWELLINGS WHO CONTRACT FOR BUT DO NOT DIRECT OR CONTROL THE WORK DOES NOT APPLY TO RIVERSIDE, THE OWNER OF THE BUILDING CONTAINING THE CHAPEL WHERE PLAINTIFF'S ACCIDENT TOOK PLACE.**

Riverside's contention that it is not subject to Labor Law §240(1) or §241(6) because of the exemption/exception applicable to owners of one or two-family dwellings who contract for but do not direct or control the work, is factually unsupportable and legally untenable, for several reasons.

First, Riverside has not pleaded an entitlement to the statutory exemption, or that it falls within the statutory exception. FRCP §8, quoted above, requires a party, in its answer, to affirmatively state any avoidance or affirmative defense. Here, the Complaint specifically alleges a violation of Labor Law §§240(1) and 241(6). Yet, Riverside's Answer does not set forth that the homeowner's exception is applicable herein to avoid application of the statute. "An affirmative defense is any *fact* asserted by the respondent that vitiates the opposing party's claim. . . . A party must raise all affirmative defenses as affirmative defenses or they are waived (italics in original)." Baicker-McKee, Janssen, Corr, Federal Civil Rules Handbook (2011), p. 350. As further stated therein:

> "Affirmative defenses must be asserted in a party's response to a preceding pleading. The goal of this requirement, consistent with federal pleading practice generally, is to provide notice to the opponent, avoid surprise and undue prejudice, and afford the opponent a chance to argue, if able, why the defense is unfounded."

Indeed, it also alerts the opponent to the issues he must face and address and as to which his discovery efforts should be geared. Riverside should not be permitted to rely upon the statutory

exception that it has raised for the first time after the right to pursue further disclosure has been foreclosed.

This result should obtain from a substantive viewpoint as well.  It is well-settled that a party who claims that it falls within the exception to the application of a statute bears the burden to plead and prove such claim.  See _Stern v. Grossman_, 1989 WL 38349 (S.D.N.Y. Cederbaum, D.J.) and cases cited therein; _Bobrow v. DePalo_, 655 F. Supp. 685 (S.D.N.Y. Leval, D.J.); _Connell v. Hayden_, 83 AD3d 30 (2d Dept. 1981) (". . . a plaintiff relying upon an exception thereto has the burden of proving that he comes within the exception.")

In any event, Riverside's contention in this regard is factually unsupported and unsupportable.  The affidavit of Riverside's President, to the effect that the premises -- particularly the chapel where the work (the only work contracted for) was being performed, which was located on the second floor of this five story building -- were residential in nature is belied by the very documents appended thereto.  Those documents conclusively establish that three floors and a major portion of a fourth, including the second floor where the chapel is located is devoted to non-residential use and is open to and frequented by the general public, who attend meetings, seminars, prayer sessions and for other non-residential purposes.   As has been demonstrated in the accompanying Declaration, Opus Dei, a worldwide organization with tens of thousands of members, operates its U.S. Press Office from the premises.

The homeowner's exemption was enacted to protect owners of one- and two-family dwellings, who are not in a position to realize, understand and insure against the responsibilities of the nondelegable duty imposed by Labor Law §§240(1) and 241(6).  _Cannon v. Putnam_, 76 NY2d 644 (1990); _Lenda v. Breeze Concrete Corp._, 73 AD3d 987(2d Dept. 2010).  The defendant has the

burden of showing that the exemption applies. *Lombardi v. Stout*, 80 NY2d 290 (1992). Any doubt concerning the applicability of the exemption should be resolved in favor of the general rule that responsibility for job safety lies with the owner. *Van Amerogen v. Donnini*, 78 NY2d 880 (1991); *Garcia v. Martin*, 285 AD2d 391 (1st Dept. 2001).

*Van Amerogen*, supra, is highly instructive in this regard. There, plaintiff fell from the roof of a four-bedroom house which had been used for rental to college students. Although the Appellate Division (156 AD2d 103) held that "neither the fact that the student-occupants were unrelated and thus did not constitute a `family', nor the fact that the owners did not occupy the property themselves but held it solely for commercial gain, excluded them from the benefit of the provisions of Labor Law §§240 and 241 which exempts from the strict liability of that statute `owners of one and two-family dwellings who contract for but do not direct or control the work [performed in relation to such dwellings],'" the New York Court of Appeals reversed, noting that the bedrooms were rented to unrelated students individually who, as here, "each made rent payments separately," and "are responsible for the utilities." Discussing the Legislative intent behind the homeowners' exception to the statute, as previously articulated in *Cannon v. Putnam*, supra, that "it is unrealistic to expect the owner of a one or two family dwelling to realize, understand and insure against the responsibility sections 240 and 241 now placed upon him" because "[t]hese owners were perceived as lacking in sophistication and business acumen and `not in a position to know about, or provide for the responsibilities of absolute liability'" (quoting Mem. of N.Y. Law Rev. Comm., 1980 McKinney's Session Law of N.Y. at 1658), the Court of Appeals stated that the exemption is an "exception to the duty to protect workers. . ." and as such, "may properly be extended only so far as the language of the exception fairly warrants and all doubts should be resolved in favor of the general provision

rather than the exception [citations, internal quotation marks and punctuations omitted]." The Court concluded that where, as here, the owners were "hardly lacking in sophistication or business acumen such that they would fail to recognize the necessity to insure against strict liability imposed by the statute" and the premises were used for commercial purposes, "such owners do not fall within the class protected by the exemption." The very same can and should be said of Riverside herein.

The later N.Y. Court of Appeals decision in *Bartoo v. Buell*, 87 NY2d 362 (1996), instructs that in order to determine whether the homeowners' exemption applies in a particular case, a "flexible `site and purpose' test" is employed. Thus, where a single structure is used for both residential and non-residential purposes, the site and purpose of the work dictates whether the exemption should be applied. Accordingly, as in *Bartoo*, where the work "directly relate[d] to the residential use of the home," the exemption should be applied. However, the corollary is equally true. That is, where, as here, the site and purpose of the work relates to the non-residential use of the building, the exemption should not be applied.

Here, it cannot be gainsaid that painting and repairing the chapel located on the second floor was not directly related to the residential use of the property, which was confined to the fifth floor and a small portion of the fourth floor. Moreover, it cannot reasonably be contended that Riverside, the owner of a five story, 22- room landmark building from which it offers "religious, educational, charitable, intellectual, moral, spiritual and cultural development of young persons" and whose "overall supervision and operation" is controlled by, *inter alia*, "the laity of Opus Dei [a worldwide institution of approximately 81,000 members], which is recognized by the Vatican as a Personal Prelature of the Roman Catholic Church" lacks sophistication and business acumen necessary to

insure against strict liability imposed by statute, such that it should be allowed to hide behind the homeowners' exemption.

*Krukowski v. Steffensen*, 194 AD2d 179 (2d Dept. 1993), involved a single structure, which contained both the owners' residence and their place of business. In applying the "site and purpose of work" test discussed above, the court noted that "although this 'site' was the defendants' principal residence, there is clear evidence that the same building was also utilized for regular commercial activity which was not merely incidental to the building's purpose. Indeed, the evidence demonstrates that this site was utilized as much, if not more, for a commercial purpose than it was for a residential one." The same can be said with even greater force for the use to which this five story building was put.

The cases relied upon by Riverside are factually distinguishable from the case at bar. In *Muniz v. Church of Our Lady of Mt. Carmel*, 238 AD2d 101 (1st Dept. 1997), the court, applying the "site and purpose" test, found that replacement of two windows in the parish house kitchen was wholly related to the residential use of the rectory, which was the residence of the parish priests, the court finding that "the kitchen served no purpose in connection with the incidental church business conducted on the premises." Obviously, the same cannot be said about the chapel herein; rather, the opposite conclusion must be drawn.

In *Uddin v. Three Bros. Const. Corp.*, 33 AD3d 691 (2d Dept. 2006), the building at which repairs were being made "was a single-family dwelling used solely as a residence for its pastor and his wife, no church business was conducted from the building" (emphasis added). Again, the undisputed facts of this case are readily distinguishable in that the premises were put too many non-residential uses.

-10-

And in *Castellanos v. United Cerebral Palsy*, 77 AD3d 879 (2d Dept. 2010), lv. to app. den. 16 NY3d 704 (2011), it was shown that the house at which the construction work was being performed was used solely for residential purposes by "Six disabled individuals who lived together and functioned as a family unit" (as specifically defined in N.Y. Mental Hygiene Law §41.34(f)). No such showing can be made by Defendant, Riverside, herein. And, no such statute exists as would warrant consideration of the individual priests and Opus Dei members residing in the premises to constitute a single or double family unit.

Where, as here, the painting work done by Plaintiff was directly related to the premises' non-residential use, the defendant owner is not entitled to the benefit of the statutory homeowners' exemption. Cf. *Valencia v. Calero* , 5 AD3d 254 (1st Dept. 2004).

It is interesting to note that in *Van Amerogen*, supra, the Court of Appeals did not find that unrelated students living in the same house, each paying rent separately and responsible for utilities, constituted a "family" for the purpose of the statute. Mr. Orchard's semantical description of such payments by the dozen Opus Dei members who reside at the premises as "sharing" simply does not meet the "duck test." As the court aptly stated in *In re Adelphia Communications Corp.*, 376 BR 87 (2007), "The logic of the court's interpretation may be expressed more colloquially through the `duck test.' That which looks like a duck, walks like a duck and quacks like a duck will be treated as a duck even though some would insist upon calling it a chicken." See also, *BMC Indus., Inc. v. Barth Indus. Inc.*, 160 F.3d 1322, 1337 N.28 (11th Cir. 1998) (following the time-tested adage: if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck, and noting: "The duck test has received wide support from the courts" [internal quotation marks omitted]).

-11-

Any argument Riverside may be tempted to make that church activities are not for a commercial purpose or fall outside the zone of commercial activity is negated by the very same cases that Riverside cited to support its contention that such activity is non-commercial.  For example, in *Muniz v. Church of Our Lady*, supra, church- related work was equated with "commercial use of the premises" and described as "church business."  In *Uddin v. Three Bros. Constr. Corp.*, supra, the court emphasized that "no church business was conducted from the building."  Here, the very opposite is true.

**POINT II**

**CONTRARY TO RIVERSIDE'S CONTENTION, IT HAS NOT
DEMONSTRATED ITS ENTITLEMENT TO JUDGMENT AS
A MATTER OF LAW DISMISSING PLAINTIFF'S COMMON
LAW NEGLIGENCE AND LABOR LAW §200 CLAIMS.**

It is well-settled that the moving party on a Rule 56 motion for summary judgment bears the

burden of demonstrating the absence of an issue of material fact.  See most recently, *N.Y. City Dist.*

*Council of Carpenters Pension Fund v. Star Intercom & Const. Inc.*, 2011 WL 5103349 (2d Cir.

October 27, 2011); see also, *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809

(2d Cir. 2009).  Even where the non-movant does not oppose the motion, the district court may not

grant the motion without first examining the moving party's submission to determine if it has met

its burden of demonstrating that no material issue of fact remains for trial.  See *Celotex Corp. v.*

*Catrett*, 477 US 317, 323 (1986); *Thompson v. Tracy*, 2008 WL 190449 (S.D.N.Y. 2008)

(McMahon, Dist. J.); *Vt. Teddy Bear Co. v. 1-800-Beargram, Co.*, 373 F.3d 241, 249 (2d Cir. 2004).

"The moving party bears the initial burden of 'informing the district court of the basis for its motion'

and identifying the matter that 'it believes demonstrate[s] the absence of a genuine issue of material

fact.'" *Gameologist Group, LLC v. Scientific Games Intern., Inc.*, 2011 WL 5075224 (S.D.N.Y.,

October 25, 2011) (Koeltl, Dist. J.).

Herein, Riverside has failed to meet its burden on that portion of its motion for summary

judgment addressed to what it refers to as Plaintiff's "general negligence" claims -- actually

Plaintiff's claims under common law negligence and its codification in Labor Law §200 (duty to

provide workers with a safe place to work).  Although Riverside's counsel in his Affirmation in

Support of Motion, dated September 14, 2011, baldly asserts, in pertinent part, that it is "undisputed that no one from Riverside Study Center ever supervised, directed or controlled the means, methods or operations of the Plaintiff," the evidentiary material submitted by Riverside does not, in fact, establish that asserted fact.

In the deposition of Riverside's witness, William P. Orchard, its President, submitted by Riverside in support of its motion (Exhibit "G" thereto), he testified that he was not personally involved with the workers who were performing the painting work in the summer of 2009, and he identified Luis Cabral, the Treasurer of Riverside, as the most active individual in seeking and selecting the contractor to perform the work of painting the chapel (see Orchard transcript, Riverside's Exhibit "G," at pp. 15, 17). He further testified that Mr. Cabral was in contact with the contractor on a periodic basis (id. at p. 17), had periodic contact with the person in charge of the construction, and, in fact, worked with the contractor, reviewing the progress of the work and discussing and making decisions regarding color schemes, etc. (id. at p. 19). It may reasonably be presumed that such functions included inspection of the work. Mr. Orchard further testified that he did not know whether Mr. Cabral had any interaction with Tony Jarvis, the on-the-job supervisor employed by the contractor, See Painting (id. at p. 20). He also identified another individual on behalf of Riverside, who had some involvement and contact with the contractor -- an individual named David Holtweiss. In view of this testimony, Mr. Orchard's statement in his Affidavit (Exhibit "I" to Riverside's motion) that "At no time during the painting work being performed in the chapel did anyone from the Riverside Study Center supervise, direct, control, manage or oversee the means and methods of the work" should be rejected as completely unsupported and inconsistent.

-14-

Notwithstanding such testimony, Riverside failed to produce any statements or evidence from Mr. Cabral or Mr. Holtweiss to support the contention that neither they (nor anyone else) were involved in any way in and/or had the authority to supervise or control the performance of the work. By this failure, Riverside failed to establish, as it was required to do, that it did not supervise or control the work, and, therefore, could not be liable for negligence arising out of the manner in which the work was performed. See *Rizzuto v. L.A. Wenger Contr. Co., Inc.*, 91 NY2d 343 (1998); *Russin v. Louis N. Picciano & Son*, 54 NY2d 311, 317 (1981); *Gallello v. MARJ Distribs., Inc.*, 50 AD3d 734, 735 (2008).

In addition to the foregoing, it should be noted that the uncontradicted evidence presented herein demonstrates that affixed to the subject scaffold was a bright yellow sticker warning that "[F]or stacked units . . . always attach 4 outriggers before stacking to prevent tipping." See Exhibit "M" to Plaintiff's motion for summary judgment -- the Report of Plaintiff's expert, Nicholas Bellizzi, P.E. Given the evidence that Riverside's representative checked the progress of the work at various times, Riverside knew or should have known that the scaffolds were being used in a stacked position without any outriggers being attached thereto, which constituted a dangerous condition for workers, including Plaintiff.

An owner or contractor may also be liable for the failure to provide workers with a reasonably safe work site pursuant to Labor Law §200 or common-law negligence principles where that owner or contractor possessed "the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*Russin v. Picciano & Son*, 54 NY2d 311 [1981]), or had actual or constructive notice of the condition that caused the accident. See, *Monroe v. City of New York*, 67 AD2d 89, 96 (2d Dept. 1979); *Miller v. Perillo*, 71 AD2d 389, 391 (1st Dept. 1979).

-15-

The duty to provide a safe place to work also encompasses the duty to make reasonable inspections to detect unsafe conditions. *DaBolt v. Bethlehem Steel Corp.*, 92 AD2d 70, 73 (4th Dept. 1983). *See also*, *Lunde v. Nichols Yacht Sales, Inc.*, 143 AD2d 816 (2d Dept. 1988); *Kennedy v. McKay*, 86 AD2d 597 (2d Dept. 1982); *Lagzdins v. United Welfare Fund-Security Div. Marriott Corp.*, 77 AD2d 585 (2d Dept. 1980) (the duty to provide a safe place to work includes the detection of dangers discoverable by reasonable diligence).

Indeed, as recognized by Riverside in the Memorandum of Law submitted by it in support of this motion:

> "Where a premises condition is at issue, property owners may be held liable for a violation of Labor Law §200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident (*see Azad v. 270 5th Realty Corp.*, 46 A.D.3d 728, 730, 848 N.Y.S.2d 688; *Kerins v. Vassar Coll.*, 15 A.D.3d 623, 626, 790 N.Y.S.2d 697; *Kobeszko v. Lyden Realty Invs.*, 289 A.D.2d 535, 536, 737 N.Y.S.2d 189; *Giambalvo v. Chemical Bank*, 260 A.D.2d at 433, 687 N.Y.S.2d 728)."

Riverside has conceded in its Memorandum of Law in support of its motion that the unstable scaffolding equipment that was set up by See Painting constituted "a dangerous or defective condition of the premises that caused or contributed to the Plaintiff's accident" (see Riverside Memo of Law, unnumbered seventh page, last paragraph). Thus, although Riverside did not supply the defective equipment, liability under §200 can be predicated upon its knowledge -- actual or constructive -- of its existence and its failure to remedy it. As explained in *Chowdhury v. Rodriguez*, 57 AD3d 121 (2d Dept. 2008):

> "When a premises condition is at issue, a property owner is liable under Labor Law §200 when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice. Under either liability standard, the common-law duty of the owner to provide a safe place to work, as codified by Labor Law §200(1), has

been extended to include the tools and appliances." (citations omitted, emphasis added)

Certainly, nothing in Riverside's papers conclusively establishes any of the facts concerning Riverside's role or involvement at the job site and in the construction sufficiently to warrant summary judgment in its favor on the issue of its liability under Labor Law §200 or common law negligence.

## CONCLUSION

For all of the foregoing reasons, Defendant Riverside's motion for summary judgment should be denied in its entirety.

Yours, etc.

PEÑA & KAHN, PLLC
Attorneys for Plaintiff
1250 Waters Place, Suite 901
Bronx, New York 10461

By: SHAYNE, DACHS, CORKER, SAUER
    & DACHS, LLP

JONATHAN A. DACHS (JD 3687)
114 Old Country Road, Suite 410
Mineola, New York 11501-4410
(516) 747-1100

Dated: Mineola, New York
      November 17, 2011